## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 22 2015, 5:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

James T. Knight
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of: G.J. and J.E., II (minor children),

and

D.J. (mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 22, 2015

Court of Appeals Case No. 25A04-1504-JT-140

Appeal from the Fulton Circuit Court

The Honorable A. Christopher Lee, Judge

Trial Court Cause No. 25C01-1403-JT-30 25C01-1403-JT-31

**May, Judge.**

D.J. (Mother) appeals the involuntary termination of her parental rights to G.J. and J.E., II (collectively, Children). Mother argues the trial court abused its discretion when it admitted certain evidence and the Department of Child Services (DCS) did not present sufficient evidence that termination of her parental rights was in the best interests of Children.

## Facts and Procedural History

Mother[1] gave birth to G.J. on August 1, 2007, and to J.E., II, on July 29, 2009. DCS first became involved with the family after Mother's husband (Stepfather[2]) abused Mother in November 2011 and January 2012. After each incident, DCS worked with Mother to put a safety plan in place in the event of further domestic abuse incidents. On February 26, 2012, police arrested Stepfather for a third domestic violence occurrence against Mother.

On March 13, 2012, DCS filed a petition alleging Children were Children in Need of Services (CHINS) based on the domestic violence against Mother. Children remained in Mother's care, and the trial court adjudicated Children as CHINS on March 20, 2012, on Mother's admission. The trial court ordered

---

[1]The parental rights of Children's fathers were also involuntarily terminated. The fathers do not participate in this appeal.

[2] Mother did not marry Stepfather until July 2012. However, for clarity, we will refer to him as "Stepfather."

Mother to complete parenting and substance abuse services, and submit to random drug tests.

[4] DCS removed Children from Mother's home and placed them in foster care on May 21, 2012, when Mother was arrested for a probation violation. In June 2012, Mother attempted suicide. In November 2012, DCS allowed Children to return to Mother's home. In January 2013, Mother was arrested. Children remained in Mother's home with Stepfather in an effort to maintain stability. On April 19, 2013, DCS removed Children from Mother's home after Mother and Stepfather tested positive for methamphetamine twice and Mother admitted to using methamphetamine. Mother was arrested on April 29, 2013, and was incarcerated again on September 25, 2014.

[5] On March 6, 2014, DCS filed a petition to involuntarily terminate Mother's parental rights to Children. The trial court held fact-finding hearings on December 16 and 17, 2014. On March 3, 2015, the trial court entered orders terminating Mother's parental rights to Children.[3]

## Discussion and Decision

[6] We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge

---

[3] The trial court entered an order for each child. The orders were nearly identical except for identifying characteristics of each child. For the purposes of this opinion, we will cite the termination order regarding G.J.

the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[7]     When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and, second, whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the decision, we affirm. *In re L.S.*, 717 N.E.2d at 208.

## *Admission of Evidence*

[8]     We review decisions concerning admission of evidence for an abuse of discretion. *Walker v. Cuppett*, 808 N.E.2d 85, 92 (Ind. Ct. App. 2004). An abuse of discretion occurs if the trial court's decision was clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* A trial court also abuses its discretion if its decision is without reason or is based on impermissible considerations. *Id.* Even if a trial court errs in a ruling

on the admissibility of evidence, we will reverse only if the error is inconsistent with substantial justice. *Id.*

*Exhibit 6*

During the termination fact-finding hearing, DCS tendered Exhibit 6, consisting of Mother's counseling records. Mother objected, stating, "I am going to object, Your Honor . . . I'm not able to cross-examine anybody about the contents; and there's so [sic] a variety of hearsay statements in this document as well." (Tr. at 106.) The trial court admitted the record over Mother's objection.[4] Mother argues the trial court abused its discretion when it allowed DCS's Exhibit 6 into evidence because it contained hearsay and Mother was not able to cross-examine the individuals who prepared the records.

Regarding Mother's mental health counseling at Four County Counseling Center, the trial court found:

> 10. Mother initially participated well in services. Mother was already participating in substance abuse services as a result of convictions for alcohol related offenses.
> * * * * *
> 12. In June of 2012, the Mother attempted to commit suicide and was committed briefly to Four County Counseling Center.

---

[4] DCS provided documentation indicating the records were "made pursuant to Indiana Rules of Evidence Sections 803(6) and 902(9)." Exhibit 6. Ind. R. Evid. 902(9) relates to "Commercial paper, a signature on it, and related documents, to the extent allowed by general commercial law." In her brief, Mother argues, "IRE 902(9) is not an appropriate basis upon which to admit medical treatment records." (Br. of Appellant at 9.) We are unable to consider Mother's argument regarding Ind. R. Evid 902(9), as she did not present it before the trial court. *See Dennerline v. Atterholt*, 886 N.E.2d 582, 594 (Ind. Ct. App. 2008) (issue not presented before trial court is waived for appellate review), *reh'g denied*, *trans. dismissed*.

\* \* \* \* \*

26. Kathy Strong, a substance abuse therapist at Four County Counseling Center, provided substance abuse services to Mother for an extended period of time.

27. Ms. Strong has concerns about Mother's ongoing use of prescription medications and that [Mother] had been regularly taking these medications since she was 18 years old.

28. Following the positive test result for methamphetamine, attempts were made to get Mother into inpatient substance abuse treatment but were unsuccessful because of Mother's prior suicide attempt. Evidently, folks with a recent history of self-harm are excluded from in patient substance abuse treatment.

29. Kathy Strong advised [Mother's Family Case Manager] that Four County Counseling Center had no additional programs available to address [Mother's] substance abuse issues and suggested DCS look for alternative programs available through a different service provider.

\* \* \* \* \*

40. Mother regularly failed to come into Four County Counseling and submit to random drug testing despite being advised that a failure to get tested would result in a presumed positive drug screen. The Court accepts that Mother had difficulties getting to Four County for testing because she did not have a license.

(App. at 15-18.)

[11] However, the trial court made forty-three findings about other matters that support the termination of Mother's parental rights to Children, including:

2. On February 26, 2012, Mother was physically assaulted by [Stepfather], resulting in serious bruising to her right eye and requiring medical treatment.

3. There were five children living in Mother's home on February 26, 2012. The oldest of the five children had to forcible [sic] remove [Stepfather] off of the Mother while another child called 911. [Children were] present during the incident. Law

Enforcement arrived and [Stepfather] was arrested for domestic battery. [Stepfather] was consuming alcohol in advance of the incident.

* * * * *

6. [Children] remained in the home with Mother immediately after the February 26, 2012 incident and Mother was instructed to call 911 if there was any further contact with [Stepfather]. At that point, [Stepfather] was barred from having contact with [Mother] as the result of a no contact order issued in [Stepfather's] criminal case.

* * * * *

15. In January, 2013, Mother was arrested for driving while suspended and possession of a controlled substance. [Children] remained in the home with [Stepfather] while Mother remained incarcerated.

16. In March of 2013, Mother was not participating fully in services and the conditions in Mother's home began to deteriorate.

17. In April of 2013, Mother tested positive twice for Methamphetamine. [Stepfather] also tested positive for Methamphetamine in April, 2013. At the point of the positive drug test, Mother had already participated in substance abuse services. At this point [Mother] was not participating in services in a meaningful fashion.

18. On April 13, 2013, the trial home visit was disrupted and [Children were] removed from Mother's home[.]

19. Shortly after the positive drug screen in April, 2013 [Mother] was again incarcerated and remained so until July or August of 2013.

20. Mother remained incarcerated until July or August of 2013. Mother did not visit with [Children] during her incarceration.

21. Mother's visits with [Children] were suspended on the recommendation of [Children's] therapist, Sandra Ringer.

22. Sandra Ringer felt the visits should be suspended because of the multiple disruptions in visits because Mother was in and out of jail. The on again - off again visits were hurtful to [Children].

23. Sandra Ringer was also concerned that [Mother] had a history of substance abuse, had tested positive for Methamphetamine, and was not actively participating in treatment.

* * * * *

25. Mother has not seen [Children] in over a year.

* * * * *

45. Mother's criminal history includes:
   a. 09/08/2011: 25D01-1004-CM-148 Operating a Motor Vehicle with a BAC .08% or greater.
   b. 09/08/2011: 25D01-1011-CM-424 Public Intoxication.
   c. 12/12/2012: 25D01-1205-CM-179 Driving While Suspended.
   d. 04/24/2013: 25D01-1301-FD-13 Driving While Suspended.
   e. 03/25/2014: 25D01-1309-FD-631 Conversion.

46. Mother's multiple incarcerations on initial arrest, failures to appear, and probation reviews frustrated attempts at reunification because services were disrupted, visits were suspended, and placements with Mother were modified or terminated.

* * * * *

49. On December 12, 2014, less than a week before the termination hearing, Mother called law enforcement and requested assistance because of a domestic dispute between [Stepfather] and one of her older sons. Mother advised law enforcement that [Stepfather] choked her son. [Stepfather] drove from the scene despite not having a valid license. Mother also told law enforcement that [Stepfather] had threatened her life. Mother now claims that it was her son that was choking [Stepfather]. The Court finds that [Mother] told law enforcement that [Stepfather] choked her son because [Stepfather] was the aggressor in the dispute. The Court further finds that Mother's claim that it was her son that choked [Stepfather] is false.

(*Id.* at 14-19.)

[12] An error in the admission of evidence is harmless when "the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment." *In re E.T.*, 802 N.E.2d 639, 646 (Ind. 2004). Based on the numerous findings that supported the termination of Mother's parental rights without referencing Mother's treatment at Four County Counseling Center, we hold there existed substantial evidence independent of the evidence to which Mother objects, such that any error in that evidence's admission was harmless.

*Mother's Testimony*

[13] During the fact-finding hearing, Mother was DCS's first witness. During her testimony, DCS asked Mother about domestic violence involving Stepfather and about Mother's prior history with DCS. Mother's counsel objected and argued DCS asked about domestic violence "solely to impeach [Mother], and these are questions that would be happening on cross-examination, not on direct." (Tr. at 32.) Mother's counsel also objected to questions about Mother's prior history with DCS because the questions were "improper for direct examination. He's leading the witness and, again, just calling her for purposes of impeachment." (*Id.* at 46.) The trial court overruled both objections and Mother continued her testimony.

[14] On appeal, Mother asserts "Indian[a] courts forbid impeachment of one's own witness by prior inconsistent statement[s] if the sole purpose in calling the

witness was to place otherwise inadmissible evidence before the jury. [5]" (Br. of Appellant at 9) (footnote added). However, she does not identify what evidence was "otherwise inadmissible" or explain why it was "otherwise inadmissible." (*Id.*) Under Ind. R. Evid. 607, a witness' credibility may be attacked by any party, including the party calling the witness, and under Ind. R. Evid. 611(c), leading questions are allowed when questioning a hostile witness or an adverse party. Therefore, the trial court did not abuse its discretion when overruling counsel's objections during Mother's testimony.

### Best Interests of Children

[15] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A juvenile court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

---

[5] We note the hearing was not before a jury. "We presume the trial judge is aware of and knows the law and considers only evidence properly before him or her in reaching a decision." *Conley v. State*, 972 N.E.2d 864, 873 (Ind. 2012), *reh'g denied*.

[16] To terminate a parent-child relationship in Indiana, the State must allege and prove:

> (A) that one (1) of the following is true:
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B) that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

[17] Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[18] Pursuant to Ind. Code § 31-35-2-4(b)(2)(C), DCS must provide sufficient evidence "that termination is in the best interests of the child." In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[19] A parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports finding termination of parental rights is in the best interests of the children. *Lang v. Starke County Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*. Mother argues the termination of her parental rights was not in the best interests of Children because "substantial evidence indicated that [she] was cooperating in services[.]" (Br. of Appellant at 10.)

[20] DCS presented evidence Mother did not successfully complete many services offered, tested positive for illegal substances multiple times throughout the proceedings, was arrested multiple times throughout the proceedings, and continued a relationship with Stepfather, who committed domestic violence against Mother in front of Children, including an incident days before the fact-

finding hearing. Mother's arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence).

## Conclusion

Any error in the admission of Mother's counseling records contained in Exhibit 6 was harmless because DCS presented sufficient independent evidence to support the termination of Mother's parental rights to Children. The trial court did not abuse its discretion when it overruled objections regarding DCS's questions to Mother because the questions were permitted under the Indiana Rules of Evidence. Finally, DCS presented sufficient evidence that termination of Mother's parental rights was in the best interests of Children. Accordingly, we affirm.

Affirmed.

Crone, J., and Bradford, J., concur.