## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 04 2016, 7:40 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael B. Troemel
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henken
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of L.S. (Minor Child) and A.S. (Father);

A.S. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 4, 2016

Court of Appeals Case No.
79A04-1508-JT-1065

Appeal from the Tippecanoe Superior Court

The Honorable Faith Graham, Judge

Trial Court Cause No.
79D03-1410-JT-47

**May, Judge.**

[1]    A.S. (Father) appeals the involuntary termination of his parental rights to L.S. (Child). He argues the trial court abused its discretion when it denied his motion to disqualify the Tippecanoe County Department of Child Services (DCS) and DCS counsel from the case. He also argues DCS did not present sufficient evidence the conditions under which Child was removed would not be remedied and termination was in the best interests of Child. We affirm.

## Facts and Procedural History

[2]    Child was born to Father and E.M.[1] (Mother) (collectively, Parents) on August 25, 2011. On June 21, 2013, DCS filed a petition alleging Child was a Child in Need of Services (CHINS) after a DCS investigation found "poor conditions" in Mother's home such as "trash and a cigarette butt on the floor within [Child's] reach," and "an unknown male also unconscious on the couch." (App. at 26.) DCS also reported Mother contacted maternal grandmother and indicated "someone needed to take [Child] or Mother was going to kill herself because she needed to get high." (*Id.*) At the time, "Father confirmed concerns about Mother's ability to care for [Child] although he took no action to intervene." (*Id.*) Child was placed in DCS custody on July 3, 2013.

---

[1] Mother consented to the termination of her parental rights and to Child's adoption. She does not participate in this appeal.

[3]     On August 21, 2013, the trial court held a fact-finding hearing, and Parents admitted Child was a CHINS. At that time, Father was on probation for his 2013 conviction of Class A misdemeanor domestic battery and was also required to register as a sex offender until November 2016 because he was convicted of Class B felony child molesting in 2004. On September 13, 2013, the trial court held a dispositional hearing and on September 17, 2013, issued its dispositional decree ordering Parents to participate in services. Father was ordered to complete a domestic violence program and follow the recommendations of the program; participate in visitation with Child; participate in the Fatherhood Engagement Program; follow all terms of his probation; remain drug and alcohol free; and participate in individual therapy.

[4]     On November 21, 2013, Father began individual therapy as ordered to address his prior sexually maladaptive behaviors. Father continued to deny any inappropriate actions, and the therapist recommended Father undergo a polygraph test. The polygraph test took place in March 2014 and revealed Father had sexual intercourse with his sister when she was fifteen years old, had sexual contact with an anonymous woman in a park despite being in a long term relationship, and frequently looked at pornographic websites on his cell phone. Father's therapist was concerned about Father's nondisclosure of these events prior to the polygraph test. Father completed individual therapy in May 2014; however, his therapist recommended he seek further treatment in a program "that worked with adults who have demonstrated sexually maladaptive behavior." (Tr. at 30.) The therapist also recommended Father

not be allowed unsupervised visitation with Child until Father completed a sexual offender program.

[5] On August 22, 2014, following the results of his polygraph test, Father filed a motion arguing the Tippecanoe County DCS office as well as DCS counsel were prejudiced against him and their involvement in the case created a conflict of interest because Child's maternal aunt, who was the prospective adoptive parent, was a DCS case manager. On September 2, 2014, the trial court denied Father's motion, finding "no legal basis upon which the Court may issue an order recusing the entire local DCS office," (DCS Ex. 1 at 4), and "no violation of the Rules of Professional Conduct by the local DCS attorney requiring disqualification." (*Id.*)

[6] On August 29, 2014, Father completed an intake assessment for a sexual offender program. Father began group therapy with the program in September 2014. The group therapy focused on relapse prevention by addressing Father's "impulsivity and sometimes judgment issues," (Tr. at 61), including his "problem with pornography" and "sexual interest in minors." (*Id.* at 66.) Father struggled in the program due to a learning disability and cognitive delays, and the program was altered to meet his special needs. However, on March 27, 2015, Father was discharged from the program because he had missed too many sessions.

[7] For the first seventeen months of the CHINS proceedings, Father attended supervised visitation with Child twice a week for two hours each visit.

Beginning in September 2014, Father was allowed supervised in-home visits, gradually increasing to ten hours a week which included a six hour visit on Saturday. However, due to Father's work schedule and Child's behavioral issues following these visits, the schedule was reduced to two visits each week, three hours per visit. Once the visitation schedule was changed, Child's behavioral issues, such as night terrors and self-harm, lessened. Father missed twelve visits during the CHINS proceedings.

[8] On October 24, 2014, DCS filed its petition to terminate Father's parental rights to Child. On November 7, 2014, Father filed another motion, again arguing the Tippecanoe County DCS office and DCS counsel were prejudiced against him and their involvement in the case created a conflict of interest because Child's maternal aunt, who was the prospective adoptive parent, was a DCS case manager. The trial court denied his motion on January 12, 2015. On January 12, 2015, and April 10, 2015, the trial court held fact-finding hearings regarding the termination petition. On July 10, 2015, the trial court issued an order involuntarily terminating Father's parental rights to Child.

## Discussion and Decision

### *Admission of Evidence*

[9] Father's motion in which he argued DCS and its attorney were prejudiced against him and their involvement in the case created a conflict of interest amounted to a request to exclude evidence from DCS. We review decisions concerning admission of evidence for an abuse of discretion. *Walker v. Cuppett*,

808 N.E.2d 85, 92 (Ind. Ct. App. 2004). An abuse of discretion occurs if the trial court's decision was clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id*. A trial court also abuses its discretion if its decision is without reason or is based on impermissible considerations. *Id*. Even if a trial court errs in a ruling on the admissibility of evidence, we will reverse only if the error is inconsistent with substantial justice. *Id*.

[10] In the event the trial court made an error in denying Father's request to exclude evidence from DCS, any error made was harmless. Ind. App. R. 66(A) states, regarding harmless error:

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

Additionally, "improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment." *In re E.T.*, 808 N.E.2d 639, 645-6 (Ind. 2004).

[11] Even excluding the evidence presented by the DCS family case manager, there existed sufficient evidence to terminate Father's parental rights. Father's therapist expressed concerns about Father's inability to admit to certain

inappropriate sexual urges and Mother testified Father made comments regarding the benefits of incest in the presence of children. In addition, the Court Appointed Special Advocate (CASA) testified Father did not complete an ordered sexual offender program. Finally, the visitation coordinator testified Father missed twelve visits with Child and the time and level of supervision of child changed throughout the case. As there was sufficient evidence outside of the challenged evidence to support the termination of Father's parental rights to Child, we conclude that any error by the trial court was harmless. *See id.* (admission of improper evidence is harmless error if judgment is supported by substantial independent evidence).

### Sufficiency of Evidence

[12]    We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied sub nom In re Swope*, 534 U.S. 1161 (2002).

[13]    "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must

subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[14] To terminate a parent-child relationship, the State must allege and prove:

>  (A) that one (1) of the following is true:

>>  (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

>>  (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

>>  (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

>  (B) that one (1) of the following is true:

>>  (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

*Challenged Findings*

[15] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[16] Father challenges Finding 19, which states:

> During the CHINS proceeding, Father attended and participated in individual counseling for approximately one (1) year to address his past history of sexually maladaptive behavior. During the majority of such treatment, Father denied current issues related to sexually maladaptive behavior. Eventually, records of Father's juvenile sexual perpetration treatment were obtained and reviewed by Father's therapist who then recommended further examination through individual counseling. Father's individual therapist discovered Father had sexually re-offended after treatment as a juvenile. Specifically, Father had incestuous sexual intercourse with his sister some time in 2012 after the birth of [Child]. Although Father's sister denied sexual victimization by Father during testimony, Father still asserts sexual intercourse with his sister occurred despite her denial. Father reported the sister confronted him after his disclosure expressing anger and stating Father "bitched me out". [sic] Father's therapist recommended that Father have no unsupervised contact with [Child] until completing an approved adult program for sexually maladaptive behavior.

(App. at 28-9.) Father argues the finding "mischaracterizes the evidence of the alleged incest." (Br. of Appellant at 9.) However, Father admitted to his therapist he "had a sexual relationship with his sister . . . [a] couple of years ago." (Tr. at 26.) Father's alternate version of events is an invitation for us to reweigh evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

[17] Father also challenges Finding 27, which states:

> Although the parents love this child, neither has the ability to meet the child's special needs. It is not safe for the child to be in

the care of the parents. To continue the parent-child relationships would be detrimental to the child. The child needs permanency now.

[18] (App. at 30.) Father argues the evidence presented does not support this finding because he:

> has a decent job, working long hours, provides for his girlfriend and their baby, and maintains housing. He faces no criminal charges and is not on probation. He has no issues with drug or alcohol abuse. The fact that you committed offenses prior to the initiation of CHINS proceedings is not sufficient to justify termination. . . . The finding in Paragraph 21 (mother said father molested his sister as a child) is an ugly smear, perhaps stated because mother wants her sister to adopt, but does not support a conclusion that [Father] is somehow a danger to [Child] in 2015.

(Br. of Appellant at 10.) The CASA testified Father did not complete the sex offender program recommended by his individual therapist and therefore never progressed beyond supervised visits with Child and she felt Father was a threat to Child's well-being. Father's arguments to the contrary are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The evidence supports the finding.

*Remedy of Conditions Resulting in Child's Removal*

[19] Father argues DCS did not present sufficient evidence to prove the conditions that resulted in Child's removal would not be remedied.[2] The trial court must judge a parent's fitness to care for his child at the time of the termination hearing. *In re A.B.,* 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke County OFC,* 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[20] Child was removed from Mother's care due to Mother's mental health and substance abuse issues. At the time of Child's removal, Father "took no action to intervene." (App. at 26.) Father is required to register as a sex offender based on an earlier conviction of child molesting, and he was on probation for a conviction of domestic violence committed against Mother. While he completed individual therapy, Father was required to submit to a lie detector test during which he admitted to committing incest with his younger sister. Father participated in visitation; however, he missed twelve sessions and Father's visits had to be limited to shorter amounts of time due to Child's behavioral problems following the visits. Finally, Father did not complete a sex

---

[2] DCS does not have to prove both a reasonable probability the conditions that resulted in Child's removal will not be remedied *and* the continuation of the parent-child relationship between Father and Child posed a threat to the well-being of Child. The statute is written in the disjunctive, and DCS must prove either by clear and convincing evidence. *See* Ind. Code § 31-35-2-4. Because there was a reasonable probability conditions leading to Child's removal would not be remedied, we need not address whether the continuation of the parent-child relationship posed a threat to Child's well-being.

offender program recommended by his individual therapist and required to be completed before Father could participate in fully unsupervised visits with Child.

[21] As Father has not taken the steps necessary to demonstrate his willingness and ability to care for Child, we cannot find error in the court's determination the conditions that resulted in Child's removal would not be remedied. Father's arguments to the contrary are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

*Best Interests of Child*

[22] Father argues DCS did not prove termination of Father's rights was in the best interests of Child, as required by Ind. Code § 31-35-2-4(c). In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the parent to those of the child. *Id*. Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing

evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

[23] Child started exhibiting aggressive and self-harming behaviors and had trouble sleeping after visiting for long periods of time with Father. Once the duration of Child's visits with Father were reduced, these behaviors decreased. Father argues "even the trial court made a lukewarm finding that [Father] was appropriate during visits [and that] finding minimizes the testimony of the visit facilitator who spent over 500 hours with [Child and Father], and came to the conclusion that this judgment was not best for [Child]," (Br. of Appellant at 10), is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

## Conclusion

[24] In the event the trial court abused its discretion when it denied Father's motion to disqualify the Tippecanoe County DCS and DCS attorney, we find any error harmless because there was substantial evidence presented outside the DCS Family Case Manager's testimony to support the termination of Father's parental rights to Child. Further, DCS presented sufficient evidence the conditions under which Child was removed from Father's care would not be remedied and termination was in the best interests of Child. Accordingly, we affirm.

[25] Affirmed.

Najam, J., and Riley, J., concur.