## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 10 2019, 9:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of Z.B. and I.B. (Children) and A.B. (Mother); | September 10, 2019 |
| | Court of Appeals Case No. 19A-JT-581 |
| A.B. (Mother), | Appeal from the Vigo Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Sarah K. Mullican, Judge |
| | The Honorable Daniel W. Kelly, Magistrate |
| The Indiana Department of Child Services, | Trial Court Cause No. 84C01-1712-JT-1603 84C01-1712-JT-1604 |
| *Appellee-Petitioner* | |

**May, Judge.**

[1] A.B. ("Mother") appeals the involuntary termination of her parental rights to Z.B. and I.B. (collectively, "Children"). Mother presents three arguments for our review, which we restate as:

> 1. Whether Mother's fundamental rights were violated when the trial court allowed the termination fact-finding hearing to occur in Mother's absence without first confirming sua sponte that the Department of Child Services had given Mother notice of the hearing pursuant to Indiana Code section 31-35-2-6.5;

> 2. Whether the trial court abused its discretion when it admitted Exhibit 14 into evidence; and

> 3. Whether Mother's trial counsel rendered ineffective assistance.

[2] We affirm.

# Facts and Procedural History

[3] Mother and I.J.B. ("Father")[1] are the biological parents of Z.B. and I.B., born March 16, 2014, and April 25, 2015, respectively. On October 14, 2016, the Department of Child Services ("DCS") investigated a report from the Terre Haute Police Department indicating they had observed cocaine on the counter at Mother and Father's home while arresting Father's friend. Police had also arrested Father on outstanding warrants. Mother submitted to a drug screen

---

[1] Father's parental rights to Children were also terminated, but he does not participate in this appeal.

and admitted she had recently used methamphetamine. Maternal Grandmother was also present in the home and admitted recent methamphetamine use. Children were removed from the home and placed in foster care, where they have remained during the proceedings.

[4] On October 17, 2016, DCS filed petitions alleging Children were Children in Need of Services ("CHINS") based on the presence of drugs in the home, Father's arrest, and Mother's drug use. On November 1, 2016, Mother and Father admitted Children were CHINS, and the trial court adjudicated them as such. On November 26, 2016, the trial court held a dispositional hearing. On December 9, 2016, the trial court ordered Mother to complete a parenting assessment and complete all recommended services, complete a substance abuse assessment and complete all recommended services, submit random drug screens, and visit with Children.

[5] Over time, Mother was non-compliant with several services, and on December 15, 2017, DCS filed petitions to terminate Mother's and Father's parental rights to Children. On January 23, 2018, the trial court held an initial hearing on the matter, at which Mother's CHINS counsel was appointed as her counsel in the termination matter. On May 21, 2018, the trial court conducted a fact-finding hearing on DCS's termination petitions. Mother did not attend the hearing; however, her counsel was present, provided argument on her behalf, and cross-examined witnesses. On August 10, 2018, the trial court issued an order terminating Mother's and Father's parental rights to I.B. On August 17, 2018,

the trial court issued an order terminating Mother and Father's parental rights to Z.B.[2]

[6]    On March 11, 2019, Mother moved for permission to file a belated appeal. On March 18, 2019, we granted her motion.

# Discussion and Decision

[7]    We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8]    "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d

---

[2] It is unclear from the record why the orders were issued on separate dates.

at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

## Notice

Mother contends DCS did not prove she was given proper notice of the final fact-finding hearing. Mother directs us to Indiana Code section 31-35-2-6.5, which states, in relevant part:

> (b) At least ten (10) days before a hearing on a petition or motion under this chapter:
>
> > (1) the person or entity who filed the petition to terminate the parent-child relationship under section 4 of this chapter; or
> >
> > (2) the person or entity who filed a motion to dismiss the petition to terminate the parent-child relationship under section 4.5(d) of this chapter;
>
> shall send notice of the review to the persons listed in subsections (c) and (d).
>
> (c) Except as provided in subsection (h), the following persons shall receive notice of a hearing on a petition or motion filed under this chapter:
>
> > (1) The child's parent, guardian, or custodian.

"Compliance with the statutory procedure of the juvenile code is mandatory to effect termination of parental rights." *In re T.W.*, 831 N.E.2d 1242, 1246 (Ind. Ct. App. 2005). Although statutory notice "is a procedural precedent that must be performed prior to commencing an action," it is not "an element of plaintiff's claim." *Id.* Failure to comply with statutory notice is thus "a defense that must be asserted." *Id.* Once placed in issue, "the plaintiff bears the burden of proving compliance with the statute." *Id.*

[10] Mother did not appear at the May 21, 2018, termination fact-finding hearing, however, her counsel was present. At the beginning of the hearing, Mother's counsel stated, "I represent the mom, your honor, and she's not here." (Tr. Vol. II at 4.) Mother's counsel did not request a continuance. The hearing went on as scheduled. Therefore, the issue of notice presented here on appeal is waived because Mother did not present the issue to the trial court. *See In re E.E.*, 853 N.E.2d 1037, 1043 (Ind. Ct. App. 2006) (father waived notice issue when he did not first present it before the trial court), *trans. denied*.

[11] To escape waiver, Mother argues the alleged noncompliance with Indiana Code section 31-35-2-6.5 was fundamental error. Fundamental error occurs when there exists "egregious trial errors. In order for this court to reverse based on fundamental error, the error must have been a clearly blatant violation of basic and elementary principles, and the harm or potential for harm must be substantial and appear clearly and prospectively." *In re E.E.*, 853 N.E.2d at 1043 (internal citation omitted).

[12]    While it is unclear from the record whether Mother received notice of the termination fact-finding hearing pursuant to Indiana Code section 31-35-2-6.5, we conclude Mother was given notice of the hearing at least twice prior to the hearing. Despite Mother's contention that "the record reveals no advisement that she needed to attend a hearing May 21, 2018, or suffer permanent termination of parental rights[,]" (Br. of Mother at 17), the following conversation occurred involving the trial court, Mother, and Father at the January 23, 2018, hearing:

> [Court]:     And did you guys get a copy of the petition that DCS filed recently requesting the termination of the parent/child relationship? Did you guys get served with that?
>
> BOTH PARENTS RESPOND AFFIRMATIVELY
>
> [Court]:     Okay. Obviously, it's a very important matter so you both have the right to be represented by lawyers if you wish in these proceedings.
>
> [Court appoints attorneys for Mother and Father]
>
> [Court]:     . . . I'll set a date in the near future when [Father] can consult with his attorney confidentially and just discuss the case kind of in preparation and then we'll set another date much further down the road that would be the actual like fact-finding hearing or trial on the issue, okay. And the Department of Child Services has the burden in proving their allegations by clear and convincing evidence in order to prevail. But we'll write down the two dates that we're giving here.

[Court Reporter]:   February 6th at 9:30.  Do you just want a half day for this too?

[Father's Counsel]: Yeah.

[Court Reporter]:   May 21st at 9 o'clock.

[Court]:       And the bailiff's in the back and will write down both of these dates down [sic] for you.  All right, we'll see you on that first date and we'll take it from there.  Thank you.

(Tr. Vol. I at 4-5.)[3]  The Chronological Case Summary ("CCS") indicates "Automated ENotice Issued to Parties" on January 24, 2018.  (App. Vol. II at 169.)[4]  Additionally, during the May 21, 2018, fact-finding hearing, the Family Case Manager ("FCM") testified:

I didn't hear from her from March 23rd until May 1st, she texted me and asked when the TPR hearing was.  She said that she was out of Terre Haute getting sober and wanted to know what her

---

[3] The record indicates the trial court held a hearing on February 6, 2018, but a transcript of those proceedings is not in the record before us.

[4] Regarding the CCS entry, Mother argues in her brief:

Mother's counsel contacted the clerk of the juvenile division of the Vigo Circuit Court to determine whether that entry resulted in any mailing of notice to Mother.  The clerk of the juvenile division of the Vigo Circuit Court reported no documents were issued by the clerk's office as a result of that entry, which is an automatic entry generated by Odyssey whenever a hearing is set.  According the clerk's office, the clerk's office sends notice of a hearing by mail only when the trial court enters a written order setting the hearing, although Odyssey automatically sends email service of entries to those with email addresses attached to that case number.  No email address is reflected on the CCS.

(Mother's Br. at 14-5.)  While a compelling explanation of events, Mother does not provide us with any citation to the record where this alleged conversation between Mother's counsel and the court clerk occurred or was memorialized in any way.

options were at this point. I told her the TPR hearing details, the date, time and location, and I asked her to come into the office and asked her what time she could come in and she never responded after that and I texted her back three minutes after she had texted me. And I have not heard from her since then and that was May 1st.

(Tr. Vol. II at 23-4.) Finally, the trial court noted in its findings the Mother "fails to appear after being notified of this hearing date in open court." (App. Vol. II at 6.)

[13] Mother also argues DCS's alleged failure to notify her pursuant to Indiana Code section 35-31-2-6.5 is fundamental error because the lack of notice meant she was unable to be present at the May 21, 2018, hearing and could not, therefore, mount a defense to DCS's allegations. However, Mother does not have an absolute right to be present at a termination hearing, she was represented by counsel at the fact-finding hearing, and her counsel cross-examined DCS's three witnesses. *See In re E.E.*, 853 N.E.2d at 1044 (parent does not have constitutional right to be present at termination hearing and parent's due process rights were thus not violated when he did not attend final termination hearing but was represented by counsel who cross-examined DCS's witnesses).

[14] Finally, Mother asserts she was prejudiced by the trial court's actions because her "side of the story was never told." (Br. of Mother at 21.) However, the trial court's order notes Mother's participation in services, albeit scarce, in its findings that Mother "tested clean [for drugs] one time while in a rehabilitation

center . . . [and that Mother] attended 74 of 114 scheduled visits with her children." (App. Vol. II at 9.)[5] Mother has not indicated what her testimony would have been except to claim she

> never had a chance to explain what efforts she had made toward completing the court-ordered services or why she was unable to complete certain services. She was unable to explain why she may have missed visitations with the children - for instance, revealed whether transportation challenges prevented her from attending. She could not inform the court of any housing arrangements or employment she had obtained or planned to obtain. Most importantly, she was unable to explain why it was in the children's best interests to continue the parent-child relationship.

(Br. of Mother at 22.) However, evidence regarding Mother's participation in services and Children's best interests was presented at trial, (*see* Tr. Vol. II at 22 (services) & 36 (best interests)), and her counsel had the opportunity to cross-examine those witnesses.

[15] Based on the facts that Mother was given notice of the date of the fact-finding hearing at least twice; that she did not have an absolute right to be present at the fact-finding hearing; that the trial court made findings regarding her participation in services; and that her counsel presented argument, cross-examined witnesses, we cannot say that any error in alleged noncompliance

---

[5] The orders terminating Mother's and Father's parental rights to Children are virtually identical except for identifying information specific to each child. We cite the findings from the order regarding Z.B.

with Indiana Code section 35-31-2-6.5 was fundamental. *See J.T. v. Marion Cty. Ofc. of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000) (no fundamental error when father not physically present at termination hearing because father was represented by counsel who presented argument and cross-examined witnesses), *reh'g denied*, *trans. denied*, *abrogated on other grounds by Baker v. Marion Cty. Ofc. of Family & Children*, 810 N.E.2d 1035, 1039 (Ind. 2004).

## Admission of Mother's Drug Screens

[16] We review decisions concerning admission of evidence for an abuse of discretion. *Walker v. Cuppett*, 808 N.E.2d 85, 92 (Ind. Ct. App. 2004). An abuse of discretion occurs if the trial court's decision was clearly against the logic and effect of the facts and circumstances before the court. *Id.* A trial court also abuses its discretion if its decision is without reason or is based on impermissible considerations. *Id.* Even if a trial court errs in a ruling on the admissibility of evidence, we will reverse only if the error is inconsistent with substantial justice. *Id.*

[17] Mother argues the trial court abused its discretion when it admitted Exhibit 14, which consisted of seventy-eight pages of drug test results that DCS testified belonged to Mother. Mother did not object to the admission of this evidence, and thus her argument is waived. *See Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind. 2006) ("In order to properly preserve an issue on appeal, a party must, at a minimum, 'show that it gave the trial court a bona fide opportunity to pass

upon the merits of the claim before seeking an opinion on appeal.'") (quoting *Endres v. Indiana State Police*, 809 N.E.2d 320, 322 (Ind. 2004)).

[18] Waiver notwithstanding we conclude any error in the admission of Exhibit 14 was harmless. "In general, the admission of evidence that is merely cumulative of other evidence amounts to harmless error as such admission does not affect a party's substantial rights." *In re Paternity of H.R.M.*, 864 N.E.2d 442, 450-1 (Ind. Ct. App. 2007). Here, DCS provided testimony of Mother's non-compliance with services, her failed attempts at substance abuse treatment, and her inability to maintain appropriate housing and employment. Additionally, Exhibit 9, to which Mother also did not object, was a prior permanency report in which DCS provided much of the same information contained in Exhibit 14, including the results of some of Mother's drug tests.

## Ineffective Assistance of Counsel

[19] Finally, Mother contends her trial counsel was ineffective for failing to ask for a continuance when she did not appear at the May 21, 2018, hearing and for failing to object to the admission of Exhibit 14. Regarding this issue our Indiana Supreme Court has held:

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the

children from parental care are unlikely to be remedied and that termination is in the child's best interest.

*Baker*, 810 N.E.2d at 1041. Therefore, based on the standard set forth in *Baker*, we must examine the evidence presented to support the termination of Mother's parental rights to Children to determine if any alleged deficiencies in her attorney's performance were so egregious as to leave us with the conclusion that termination was error. *In re A.P.*, 882 N.E.2d 799, 806 (Ind. Ct. App. 2008), *reh'g denied*.

[20] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[21] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208. Mother does not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[22] Regarding the termination of Mother's parental rights to Children, the trial court found:

> 6. There is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied, and that the continuation of the parent-child relationship would pose a threat to the well-being of the children in that:
>
> A. On or about October 14, 2016, the Indiana Department of Child Services (DCS) received a report that

both children were victims of neglect in that there was drug use in their home and that law enforcement was there making arrests of adults in the home.

B. FCMs Deborah Seifert and Linda Airhart responded promptly to the report. [Father] had outstanding warrants and was arrested at the home. Two other individuals were also arrested and taken to jail. A substance later identified as cocaine was found in the home and tagged as evidence by police.

C. [Mother] admitted to recent use of methamphetamine.

D. Maternal grandmother was in the home and also admitted to recent use of methamphetamine.

E. [Father] had a previous substantiation for domestic violence with [Mother].

F. Due to the deep family involvement with drugs and domestic violence, the children were placed in foster care and have remained in foster care for nearly two years.

G. After receiving services for the entirety of the CHINS cases, Mother was still homeless at the time of the fact-finding hearing held on May 21, 2018. She had resided in public housing for awhile, but was evicted.

H. Mother has been unemployed throughout the entire CHINS proceedings and had no legal source of income with which to support her children.

I. After being court-ordered to submit to drug screens, Mother was closed out of services with Redwood

Toxicology several times for non-compliance. Out of all of the drug screens Mother did take, she only tested clean one time while in a rehabilitation center. Eight screens were positive for marijuana only, and all others were positive for methamphetamine and amphetamine. The last screen to which Mother submitted prior to the termination hearing was on March 21, 2018, when she tested positive for methamphetamine, amphetamine and marijuana. This screen was given at the time she had come for a supervised visit with her children.

J. Mother had failed to show up for two scheduled substance abuse assessments and eventually entered an in-patient rehabilitation program from July 18, 2017 to August 8, 2017. Although she had tested negative when she entered in-patient rehab, she tested positive for THC on the day of her release. She was supposed to follow up that treatment with an outpatient drug treatment program which she failed to do.

K. DCS had recommended and the court had ordered Mother to participate in home-based case management. However, despite repeated efforts by DCS to get Mother to participate, she only attended a total of three home-based case sessions.

L. Mother was arrested on a warrant for failure to appear on January 11, 2018, and again on February 28, 2018, for unlawful possession of a syringe and possession of methamphetamine.

M. Mother only attended 74 of 114 scheduled visits with her children through December, 2017. She scheduled two additional visits for late January, 2018, and failed to appear for either. After attending court on March 15,

2018, Mother scheduled two more visits for late March, 2018, which she did attend. Although the FCM tried to contact Mother to come to the office for additional visits, she failed to respond and has had no further contact with DCS or her children.

* * * * *

V. During the visits that Mother attended, she was often lethargic and tended to fall asleep and was not involved with the children. The supervisors of the visits observed to [sic] demonstrable bond.

W. To date, neither parent has addressed the substance abuse issue that got DCS involved with their children on October 14, 2016.

* * * * *

7. Termination of the parent-child relationship between the parents and both children is in the best interest of the children, as testified by the Family Case Manager and CASA [Court Appointed Special Advocate].

(App. Vol. II at 7-9.) While Mother's trial counsel could have employed a more aggressive stance in Mother's favor, Mother's counsel presented argument and cross-examined witnesses on Mother's behalf during the termination fact-finding hearing on May 21, 2018. Coupled with the overwhelming evidence to support the termination of Mother's parental rights to Children, we cannot say that any alleged error her trial counsel made rendered the counsel's assistance ineffective. *See In re A.P.*, 882 N.E.2d at 808 (despite some "troubling aspects"

of mother's representation, mother's trial counsel was not ineffective when there was substantial evidence to support termination of parental rights and counsel's errors did not deprive mother of a fundamentally fair hearing).

## Conclusion

[23]     Mother has waived her argument regarding the sufficiency of notice under Indiana Code section 31-35-2-6.5 because she did not argue the issue before the trial court. Waiver notwithstanding, she received notice in various forms at least twice prior to May 21, 2018, and thus any violation of the statute was not fundamental error. Further, Mother waived her argument regarding the admission of Exhibit 14 because she did not object to its admission before the trial court. Waiver notwithstanding, any error in the admission of Exhibit 14 was harmless because it was cumulative of other evidence properly admitted that supported the involuntary termination of Mother's parental rights to Children. Finally, Mother did not receive ineffective assistance of counsel because counsel's performance was not so defective to deny Mother a fundamentally fair trial, and the evidence supporting the termination of Mother's parental rights was overwhelming. Accordingly, we affirm the decision of the trial court.

[24]     Affirmed.

Najam, J., and Bailey, J., concur.